# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ALBERT NOAK, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:18-CV-288-JEM |
| ) | |
| ANDREW SAUL, Commissioner of the ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Albert Noak on August 6, 2018, and Plaintiff's Opening Brief [DE 19], filed January 14, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 25, 2019, the Commissioner filed a response, and Plaintiff filed a reply on April 8, 2019.

## I.     Background

On August 11, 2014, Plaintiff filed applications for benefits alleging that he became disabled on May 1, 2014. Plaintiff's application was denied initially and upon consideration. On March 6, 2017, Administrative Law Judge ("ALJ") Kevin Vodak held a video hearing, at which Plaintiff, along with an attorney, his girlfriend, and a vocational expert ("VE") testified. On June 23, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date.

3. The claimant has the following severe impairments: seizure disorder; status post surgical removal of colloid cyst; status post knee procedures; systemic lupus erythematosus; and alcohol use disorder.

4. The claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following limitations: the claimant can frequently handle or finger bilaterally; occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl. The claimant should never be exposed to unprotected heights or moving mechanical parts. He should never be required to operate a motor vehicle. Due to moderate limits in concentration, persistence, or pace, the claimant is able to understand, remember, and carry out simple, routine, or repetitive tasks; and is only able to engage in no more than occasional decision making and be exposed to no more than occasional changes in job settings. The claimant would be off task at least 20 percent of the workday beyond scheduled breaks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following limitations: the claimant can frequently handle or finger bilaterally; occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl. The claimant should never be required to operate a motor vehicle. Due to moderate limits in concentration, persistence, or pace, the claimant is able to understand, remember, and carry out simple, routine, or repetitive tasks; and is only able to engage in no more than occasional decision making and be exposed to no more than occasional changes in job settings.

14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work.

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 18]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the RFC was not based on substantial evidence, but that the ALJ cherry-picked, misstated, and improperly interpreted medical evidence. The Commissioner argues that the conclusion was supported by substantial evidence, and even if there were errors in the ALJ's opinion, they were harmless.

On December 8, 2014, Plaintiff's treating physician, Dr. Zato, completed a statement indicating that Plaintiff was at least temporarily disabled and possibly permanently disabled depending on the outcome of his surgery and treatment of uncontrolled seizures, balance problems, and headaches, as well as inability to drive, and that he might be able to do some light work but only for a few hours per day. AR 618. The record also contains a letter from Dr. Zato dated April 1, 2015 indicating that Plaintiff would be off of work for at least 6-12 more months following his brain surgery. The ALJ gave these opinions "little weight" because they each addressed only short-

term limitations and infringe on findings reserved for the Commissioner. The ALJ also addressed the treatment notes of another of Plaintiff's treating physicians, Dr. Amico, and stated that he gave the opinion great weight, but only the part of the opinion indicating that Plaintiff cannot drive. The ALJ did not address the seizures, sudden onset dizziness and difficulty ambulating with loss of balance, severe numbness and tingling, or urgent need for additional treatment, nor the numerous other medical problems (insomnia, hypertension, chronic pain, anxiety) described on the same page of the medical records, without explanation. The ALJ impermissibly cherrypicked one sentence from the medical record while ignoring the rest. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a

treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ gave "great weight" to a single line in the treatment notes of Dr. Amico, without any additional analysis of her treatment of Plaintiff or any of the other limitations that were included on the same page of treatment notes, let alone elsewhere in his records, and gave "little weight" to the opinion of treating physician Dr. Zato, again without describing any of the factors to be analyzed in determining what weight to give his opinion. The ALJ instead disregarded the opinion because it opined that Plaintiff would be unable to work, a conclusion contrary to the regulations. *See, e.g. Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 SSR LEXIS 2 at *15, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

The only other opinion in the record that the ALJ gave weight to was that of the psychological state agency consultants, to the extent that "claimant's alcoholism is material to the case and would be the basis of his disabling time off-task." AR 18. He gave "some weight" to the report of a physical exam performed in October 2014 that he characterized as "within normal limits," but review of the report indicates that the ALJ ignored reports of seizure disorder, upper extremity pain, high blood pressure, and dementia. The Court cannot determine what actual medical evidence was used by the ALJ to determine the RFC.

As Plaintiff argues, there are numerous other inconsistencies between the record and the

7

ALJ's summation of it. For example, the ALJ stated that Plaintiff's "EMG was normal" and for that reason Plaintiff could frequently handle or finger bilaterally, but the EMG notes stated that the EMG was *abnormal*, AR 826, and several other physicians in the record referred to an abnormal EMG, and Plaintiff completely failed to discuss the second EMG in 2016, with results "consistent with sensorimotor peripheral neuropathy." AR 872, 879. Similarly, the ALJ asserted that Plaintiff's seizures were not as severe as he alleged because the seizures only came about once every three weeks for only a few seconds each and Plaintiff could feel the seizures coming, citing to a single treatment note for this conclusion. AR 24. This conclusion ignores other information about Plaintiff's seizures in the same report, as well as numerous other reports throughout the record reporting that Plaintiff regularly suffered from seizures occurring up to twice a week.

The Commissioner asserts that any error regarding cherry-picking and misstated evidence was harmless, but for an error to be considered harmless, the Court must be able to predict with great confidence that the result on remand would be the same. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Although, as the Commissioner argues, some of the medical evidence that was misstated in the RFC analysis was listed elsewhere in the ALJ's opinion, a list of evidence does not equate to an analysis or discussion. The ALJ ignored or misstated large amounts of evidence that supported Plaintiff's subjective symptoms, and the Court cannot conclude that that error was harmless.

The ALJ failed to give weight to any of Plaintiff's treating sources, without an explanation that withstands even cursory scrutiny, failed to explain how the medical evidence in the record supported the RFC, and cherry-picked and mischaracterized evidence to support his conclusion. *See, e.g.*, *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' and she is not

allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.") (quoting *Clifford*, 227 F.3d at 872) (other citations omitted). On remand, the ALJ is directed to thoroughly address the medical evidence in the record, including properly weighing the reports of treating and examining physicians in accordance with the regulations, and to obtain additional information as needed. See, e.g., *Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)). The ALJ is also directed to thoroughly explain how claimed limitations are either incorporated into the RFC or found to be unsupported, without substituting his own judgment for actual medical opinions in the record.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Plaintiff's Opening Brief [DE 19], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 11th day of March, 2020.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record